UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JONATHAN WANG and GOLFBESTBUY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GOLF TAILOR, LLC, and TIM OYLER,<br><br>Defendants. | Case No. 17-cv-00898-LB<br><br>**ORDER DISMISSING COPYRIGHT AND TRADE-SECRETS COUNTER CLAIMS AND STRIKING AFFIRMATIVE DEFENSES OTHER THAN THOSE BASED ON UNCLEAN HANDS**<br><br>Re: ECF No. 60 |

## INTRODUCTION

This case and the three cases consolidated with it generally involve competing claims of design-patent theft related to a golf club — the XE1 — and a golf training aid — the Speed Whip.[1] The plaintiffs (Jonathan Wang and Golf BestBuy) and the defendants (Timothy Oyler and Golf Tailor) both claim to have designed the golf club and training aid; both claim the other stole their designs. In this case, the plaintiffs seek relief under U.S. copyright statutes (17 U.S.C. § 101 *et seq.*), among other laws, arguing that the defendants used copies of the plaintiffs' designs to counterfeit the golf club and golf aid.[2] The defendants countersued the plaintiffs with six claims

---

[1] First Amend. Compl. ("FAC") – ECF No. 70. Record citations refer to materials in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] FAC – ECF No. 70 at 18–26.

ORDER – No. 17-cv-00898-LB

for declaratory relief regarding the copyright-infringement claims (based on inequitable conduct in the form of the plaintiffs' theft of the defendants' trade secrets) and one claim of trade-secrets theft in violation of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426–2426.11.[3]

The plaintiffs move to (1) dismiss the copyright counterclaims under Rule 12(b)(6) on the ground that the defendants do not adequately plead inequitable conduct as an affirmative defense, (2) strike the second affirmative defense of "Patent Damages Barred;" and (3) dismiss the defendants' trade-secrets counterclaim under Rule 12(b)(6) for failure to plausibly plead facts showing trade-secrets theft.[4] The court strikes the affirmative defense of "Patent Damages Barred," strikes the inequitable-conduct defense to the extent that the defense is predicated on a theory of an implied license or permission, and denies the motion to strike the unclean-hands defense. The court grants the motion to dismiss the counterclaims, primarily because Mr. Wang's alleged bad acts happened after Golf Tailor publicly disclosed its trade secrets through product sales and also because the allegations of conspiracy are conclusory.

## STATEMENT[5]

This case involves the design rights embodied in two products. The first is a golf club and the second is a golf "training aid." The plaintiffs call the club the "Wang Golf Club," which defendant Golf Tailor has manufactured and sold (originally under a legitimate contract) as its own "XE1 Wedge."[6] The plaintiffs claim that Golf Tailor sold a "CSi Wedge" as an unauthorized derivative of the XE1.[7] The training aid is called the "Speed Whip."[8] The parties' competing claims are the

---

[3] Second Amend. Answer, Affirmative Defenses, Counterclaims, and Third-Party Complaint ("SAAC") – ECF No. 52 at 20–24.

[4] Motion – ECF No. 60 at 8.

[5] The facts in this Statement generally are from the SAAC, judicially noticed public records showing the dates of the copyright and patent applications, and Golf Tailor's admissions.

[6] FAC – ECF No. 70 at 6–7 (¶¶ 24, 30, 34)

[7] *Id.* at 10 (¶ 50).

[8] *Id.* at 17 (¶¶ 87, 89).

ORDER – No. 17-cv-00898-LB         2

1 same for both products. The plaintiffs and the defendants claim that the other party stole their

2 designs, produced and sold knockoffs, and thus misappropriated their intellectual property in the

3 XE1 and Speed Whip.

4     Plaintiff Jonathan Wang designs golfing equipment, including clubs and "training aids."[9] He is

5 the founder of plaintiff GolfBestBuy, Inc.[10] Mr. Wang claims to have filed three copyright

6 applications related to the Wang Golf Club: (1) U.S. Copyright Office Case No. 1-4461451449

7 (the "'449 Drawing"); (2) No. 4461451644 (the "'644 Drawing"); and (3) No. 4459918566 (the

8 "'566 CAD Drawing").[11] He claims to have seven copyright applications on a line of related clubs:

9 (4) Nos. 1-4459919064, 1-4461451494, and 1-4461451569 (collectively, the "'569 Drawing");

10 and (5) Nos. 1-4461451689, 1-4461451744, and 1-4461451779 (the "'799 Drawing").[12] Finally, in

11 addition to these "technical drawings," Mr. Wang claims to have "created prototypes" of the Wang

12 Golf Club; photographs of these prototypes are also in dispute here.[13] Mr. Wang registered his

13 copyrights in February 2017.[14]

14     According to the plaintiffs: "Defendants acquired copies of Mr. Wang's six designs —

15 including the '449 and '644 Drawings — from [Golf Gifts & Gallery], a distributor of golf

16 merchandise that regularly sells products designed by Mr. Wang."[15] Mr. Wang provided Golf Gifts

17 & Gallery with two prototype golf clubs and photographs of the prototypes because the defendants

18 expressed interest in buying the clubs from Golf Gifts & Gallery.[16] The defendants acquired the

19 prototypes and photographs from Golf Gifts & Gallery.[17] Golf Tailor proceeded to buy the subject

---

[9] *Id.* at 6 (¶ 24).

[10] *Id.* at 3 (¶ 6).

[11] *Id.* at 6 (¶ 24).

[12] *Id.*

[13] For all these allegations, see *id.* at 7 (¶¶ 25, 29 ) and the attendant exhibits.

[14] Certificates of Registration, Exs. F–K, Supp. Dyer Decl. – ECF Nos. 69-2 to 69-6 and 95.

[15] SAAC – ECF No. 52 at 7 (¶ 28).

[16] *Id.* (¶ 29).

[17] *Id.*

ORDER – No. 17-cv-00898-LB     3

clubs for about a year and then started counterfeiting them.[18] Once it had a source manufacturing the counterfeits, Golf Tailor stopped buying the authorized clubs.[19] The plaintiffs sold the XE1-branded inventory that had been earmarked for Golf Tailor.[20] When the plaintiffs did this, Golf Tailor sued them (in Washington federal court) for unfair competition and false designation of origin.[21]

The defendants tell a different story. In April 2015, Golf Tailor's CEO Tim Oyler asked Golf Gifts & Gallery to manufacture the Speed Whip ("designed through instruction and direction by Mr. Oyler . . . with Mr. Oyler directing all design modifications") for Golf Tailor to sell to distributers and consumers.[22] "Around July 2014, and concurrently with the manufacture of the Speed Whip," Golf Tailor hired Golf Gifts & Gallery to "prepare CAD drawings based on Mr. Oyler's design for a new golf club," the XEI, again for Golf Tailor to sell to end users.[23] "As with the Speed Whip, [Golf Tailor and Mr. Oyler disclosed] the confidential XE1 information" to Golf Gifts & Gallery.[24]

Golf Tailor specifies its "confidential design information" as "emails, texts, and conversations containing proprietary information about the design and manufacture of the XE1 and Speed Whip products. This information is referred to herein as the "Golf Tailor Trade Secrets."[25] It alleges that it took reasonable steps to maintain the secrecy of the trade secrets — in part by telling Golf Gifts & Gallery that the information was confidential and agreeing with Golf Gifts that information would be disclosed only to manufacture the products — in order to maintain its competitive advantage for its first-to-market products.[26]

---

[18] *Id.* at 8–9 (¶¶ 30, 34–35, 41–42).
[19] *Id.* at 9 (¶ 43).
[20] *Id.* at 10, 20 (¶¶ 50, 107).
[21] *Id.* at 15–16 (¶¶ 71, 76).
[22] *Id.* at 16 (¶¶ 18–21).
[23] *Id.* at 16 (¶¶ 22–23).
[24] *Id.* (¶ 22).
[25] *Id.* at 17 (¶ 26).
[26] *Id.* at 17–18 (¶¶ 27–31).

According to the defendants, Golf Gifts & Gallery told Golf Tailor that it would manufacture the Speed Whip and XE1 at its own facility in China.[27] Instead, it contracted with third-party manufacturer Kingstar to manufacture the products.[28] Mr. Wang is the president of Kingstar and obtained a Chinese design patent for the XE1design; he later used this patent to obtain the patent that issued as U.S. Patent D766,388.[29] He also obtained a Chinese design patent for the Speed Whip, used it to file an expedited patent application in the U.S., and obtained the patent that issued as U.S. Patent D769,390.[30] The patents are the subject of the related patent cases.[31] The relevant dates for the patent applications are undisputed and are as follows: (1) XE1: application for Chinese Patent No. 2015304 filed October 24, 2015, and application for U.S. Patent No. D766,388 filed March 16, 2016; and (2) Speed Whip: application for Chinese Patent No.201620118508 filed April 11, 2016, and application for U.S. Patent No. D769,390 filed July 14, 2016.[32]

Golf Tailor began selling the XE1 "on or about June 24, 2015" and began selling the Speed Whip "on or about March 2016."[33]

The overall timeline relevant to the litigation thus is this:

| Timeline for XE1 | |
|---|---|
| **Date** | **Event** |
| June 24, 2015 | Golf Tailor begins publicly selling XE1 golf club |
| October 24, 2015 | Mr. Wang files Chinese Patent No. 20153041454 |
| March 16, 2016 | Mr. Wang files U.S. Patent No. D766,388 |
| February 22, 2017 | Mr. Wang registers copyrights |

---

[27] *Id.* at 18 (¶ 33).

[28] *Id.*

[29] *Id.* (¶ 35).

[30] *Id.* at 19 (¶ 38).

[31] *Id.* at 18–19 (¶¶ 35, 40).

[32] Patent Applications, Exs. C–E, Dyer Decl. – ECF Nos. 60-4 to 60-6.

[33] Golf Tailors' Responses to GolfBestBuy's First Set of Requests for Admission Nos. 2 and 4, Ex. B. to Dyer Decl. – ECF No. 60-3 at 3–4; *see* SAAC – ECF No. 42 at 16 (¶¶ 24–25) (Golf Tailor approved the final samples of the XEI in March 2015 and placed an order with Golf Gift & Gallery for 2,700 wedges; "at about this time," it approved the final samples of the Speed Whip and placed an order for 15,000 units.).

ORDER – No. 17-cv-00898-LB           5

| Timeline for Speed Whip | |
|---|---|
| **Date** | **Event** |
| March 2016 | Golf Tailor begins publicly selling Speed Whip |
| April 11, 2016 | Mr. Wang files Chinese Patent No. 201630118508 |
| July 14, 2016 | Mr. Wang files U.S. Patent No. D769,390 |
| February 22, 2017 | Mr. Wang registers copyrights |

Golf Tailor brings six counterclaims for a "Declaratory Judgment of Non-Infringement" based on the defendants' inequitable conduct, implied permission, or acquiescence for six drawings: (1) the '499 Drawing; (2) the '644 Drawing; (3) the prototype photographs; (4) the '566 CAD Drawing; (5) the '569 Drawing; and (6) the '644 Drawing.[34] In its seventh counterclaim, it charges theft of trade secrets involving the XE1 and the Speed Whip, in violation of CUTSA (Cal. Civ. Code §§ 3426–2426.11).[35]

The plaintiffs then moved to dismiss the defendants' counterclaims and to strike the second and third affirmative defenses: "Patent Damages Barred" and "Inequitable Conduct/Estoppel/Unclean Hands."[36]

The court notes this procedural context. When the plaintiffs filed their motion, the operative complaint was the initial complaint.[37] The defendants' defenses and counterclaims were in the Second Amended Answer, Affirmative Defenses, Counterclaims, and Third-Party Complaint.[38] The plaintiffs answered it and filed their motion.[39] The parties briefed the motion fully.[40] The plaintiffs then filed an amended complaint, the defendants filed a superseding responsive pleading and counterclaims, and the plaintiffs answered.[41] The pending motion thus is directed at a pleading

---

[34] SAAC – ECF No. 52 at 20–24 (Counts I through VI).

[35] *Id.* at 24 (¶¶ 68–78).

[36] Motion – ECF No. 60.

[37] Compl. – ECF No. 1.

[38] SAAC – ECF No. 52.

[39] Answer – ECF No. 63; Motion – ECF No. 60.

[40] Motion – ECF No. 60; Opposition – ECF No. 67; Reply – ECF No. 70.

[41] FAC – ECF No. 70; Answer, Affirmative Defenses, Counterclaims, and Third-Party Claims – ECF No. 85; Answer – ECF No. 89.

replaced by an amended pleading. In all relevant respects, the two pleadings are the same. The court thus cites the Second Amended Answer, Affirmative Defenses, Counterclaims, and Third-Party Complaint[42] because the parties cite it in their papers, the outcome is the same, and a different approach would unnecessarily burden the parties, who would have to update their papers.

The court held a hearing on November 2, 2017.[43]

## GOVERNING LAW

The plaintiffs move to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and move to strike the second and third affirmative defenses under Rule 12(f).

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). A claim will normally survive a motion to dismiss if it offers a "short and plain statement . . . showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). This statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a mere possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). Such allegations must be

---

[42] SAAC – ECF No. 52.

[43] Minute Order – ECF No. 96.

ORDER – No. 17-cv-00898-LB 7

construed in the light most favorable to the nonmoving party. *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached," however, "the exhibit trumps the allegations." *Gamble v. GMAC Mortg. Corp.*, 2009 WL 400359, *3 (N.D. Cal. Feb. 18, 2009) (quoting *N. Ind. Gun & Outdoor v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)).

The pleading standards of *Iqbal* and *Twombly* apply as well to counterclaims and affirmative defenses. *See Barnes v. AT&T Pension Ben. Plan-Nonbargained Program,* 718 F. Supp. 2d 1167, 1170–71 (N.D. Cal. 2010). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Id.* at 1171 (quoting *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). Affirmative defenses that do not meet these standards may be struck under Rule 12(f). *See id.* at 1170–71; *see also MIC Prop. and Cas. Corp. v. Kennolyn Camps, Inc.*, No. 5:15-cv-00589-EJD, 2015 WL 4624119, at *2 (N.D. Cal. Aug. 3, 2015) ("In this district at least, a defendant provides 'fair notice" of an affirmative defense by meeting the pleading standard articulated in Federal Rule of Civil Procedure 8, as further refined by" *Twombly* and *Iqbal*.).

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule 12(f)] motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial." *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012) (citing *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). Striking is appropriate if it "will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Sliger v. Prospect Mortg.*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011).

"Immateriality" under Rule 12(f) speaks to the relevance of challenged allegations. "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994) (quotation omitted). Where a movant challenges allegations as immaterial, "[a] court must deny the motion to strike if there is any doubt whether

the allegations in the pleadings might be relevant in the action." *Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011). "[G]enerally," then, courts grant such a motion "only where 'it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Rosales*, 882 F. Supp. 2d at 1179 (quoting *Walters v. Fid. Mortg. of Cal.,* 730 F. Supp. 2d 1185, 1196 (E.D. Cal. 2010) (citing in turn *Lilley v. Charren,* 936 F. Supp. 708, 713 (N.D. Cal. 1996)).

"As a rule, motions to strike are regarded with disfavor because striking is such a drastic remedy; as a result, such motions are infrequently granted." *Amini Innovations Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 489-90 (C.D. Cal. 2014) (citing *Freeman v. ABC Legal Servs., Inc.,* 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012) (citing in turn *Stanbury Law Firm v. IRS,* 221 F.3d 1059, 1063 (8th Cir. 2000)). "[W]hen ruling on a motion to strike," the court accepts the challenged allegations as true and "must liberally construe" those allegations "in the light most favorable" to the non-moving pleader. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010); *see, e.g., Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1211 (S.D. Cal. 2007) ("In determining a motion to strike, a district court must view the pleadings in the light most favorable to the pleader.").

## ANALYSIS

### 1. California Uniform Trade Secrets Act

The court previously dismissed the defendants' trade-secrets counterclaim claim under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. The DTSA applies only to misappropriations that occur on or after May 11, 2016, the DTSA's date of enactment. *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-2177-SI, 2017 WL 1436044, *3 (N.D. Cal. Apr. 24, 2017); *accord, e.g., Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*, No. 16-CV-3737-JCS, 2017 WL 412524, * 8 (N.D. Cal. Jan. 31, 2017). The court held that to the extent that product sales preceded DTSA's enactment, the date-of-enactment issue precluded a

1  DTSA claim.[44] The dismissal was without prejudice to the defendants' raising a California trade-
2  secrets claim.[45]

To state a claim for trade-secrets theft under CUTSA, a defendant must plead the existence of a trade secret, and the misappropriation of it. Cal. Civ. Code § 3426.1(b); *see AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003). The defendants plausibly plead the existence of their trade secrets in the form of their proprietary and secret designs, their efforts to retain secrecy, and their communication of confidentiality to Golf Gifts & Gallery. As the court held, the allegations "are at least minimally sound under Rule 8(a)(2) and 12(b)(6)."[46] But the defendants did not plead the misappropriation of the trade secrets. The timeline in the Statement demonstrates that the defendants' alleged use of the trade secrets happened after Golf Tailor publicly disclosed the trade secrets through its product sales. There can be no unlawful misappropriation after public disclosure of the secret. *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002) ("[p]ublic disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret"); *Kavanagh v. Tuller*, No. 16-CV-01937-H (BGS), 2017 WL 1496436, at *4 (S.D. Cal. Apr. 26, 2017) (dismissing with prejudice trade secret claim because claimant admitted she publically disclosed her product through marketing and sales); *Hosp. Mktg. Concepts LLC v. Six Continents Hotels, Inc.*, No. 15- SACV-01791 JVS (DFMx), 2016 WL 9045853, at *5 (C.D. Cal. May 2, 2016) ("Hospitality Marketing alleges that it voluntarily disclosed its trade secrets…[it] therefore fails to allege all of the requisite elements of a trade secret claim…The Court dismisses the claim for misappropriation of trade secrets with prejudice.").

Golf Tailor counters that the copyright and patent applications, and the resulting lawsuits, were "one result of Wang's misappropriation, they were also a part of a course of conduct that began with the misappropriation of Golf Tailor's designs before the public sale: 'Among other things,

---

[44] *Id.*

[45] *Id.*

[46] Order – ECF No. 39 at 9.

ORDER – No. 17-cv-00898-LB    10

1  [Plaintiffs'] misappropriation and conspiracy to misappropriate has led to other parties'
2  manufacturing of counterfeit Golf Tailor products and other products that compete with Golf
3  Tailor's products, to Wang's improper filing of patents in the U.S. and China on designs created
4  and owned by Golf Tailor, to Wang's improper filing of copyrights in the U.S. based on designs
5  created and owned by Golf Tailor, and to lawsuits against Golf Tailor based on its own intellectual
6  property.'"[47]

This does not allege any misappropriation of trade secrets that happened before the trade secrets became public. The only factual allegations about Mr. Wang's bad acts are his copyright and patent applications. Those came after the products were sold. The previous paragraph is too conclusory to allow the inference that, for example, that he or anyone else sold counterfeit goods before Golf Tailor's products went to market.

The allegations that Mr. Wang acquired the trade secrets by improper means are insufficient for similar reasons.

Under CUTSA, "'[i]mproper means includes theft, bribery, misrepresentation, breach or inducement of a duty to maintain secrecy, or espionage through electronic or other means." Cal. Code Civ. P. § 3426.1(a). There are no allegations regarding improper means except the SAAC's conclusory allegations that Mr. Wang conspired with Dean Chudy of Golf Gifts & Gallery to misappropriate the trade secrets.[48] The allegations can be summarized as follows. Golf Tailor disclosed its trade secrets to Golf Gifts and worked with it to design the golf products. Golf Tailor told Golf Gifts that the trade secrets were secret and needed to be kept secret. Mr. Chudy said that Golf Gifts had its own manufacturing facility in China, and Golf Tailor relied on this representation. In fact, Golf Gifts contracted with Mr. Wang's company Kingstar to manufacture the products. Mr. Chudy and Mr. Wang colluded, are co-conspirators, and are liable.[49]

This does not plausibly plead an unlawful agreement or an act in furtherance of the agreement.

---

[47] Opposition – ECF No. 7 (quoting SAAC – ECF No. 52 at 25 (¶ 5).

[48] SAAC – ECF No. 52 at 15 (¶ 12).

[49] *Id.* at 16–20 (¶¶ 18–43).

*See Athena Feminine Techs. Inc., v. Wilkes*, No. C 10-04868 SBA, 2011 WL 4079927, at * 7 (N.D. Cal. Sept. 13, 2011). Again, Mr. Wang's alleged bad acts are after Golf Tailor sold its products and therefore are not plausibly unlawful.

**2.    Copyright Claims and Parallel Affirmative Defense of Unclean Hands**

The defendants raise the affirmative defenses of inequitable conduct, implied permission, or acquiescence for the plaintiffs' copyright claims for the disputed drawings, and they also bring six counterclaims for a "Declaratory Judgment of Non-Infringement" for the six drawings based on the affirmative defenses. They clarify in their opposition that they plead inequitable conduct as part of the unclean-hands doctrine.[50]

"[A] defendant asserting that a plaintiff's claim is barred by unclean hands must show that the plaintiff acted unfairly or fraudulently respecting the matter in controversy." *Ample Bright Dev., Ltd. v. Comis Int'l*, 913 F. Supp. 2d 925, 940 (C.D. Cal. 2012). "To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Oracle Am. v. Hewlett Packard Enter. Co.*, No. 16-CV-1393-JST, 2017 WL 2311296, at *2 (May 26, 2017) (quotation omitted). "In the Ninth Circuit, unclean hands is a defense to copyright infringement when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *Id.* (quoting *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990–91 (9th Cir. 2009)) (internal citations and footnotes omitted).

The defendants' allegations of unclean hands sufficiently support their affirmative defense of unclean hands at the pleadings stage. The court lets the estoppel theory stand too (to the extent that it is based on the unclean-hands defense). Striking is a drastic remedy. *Freeman*, 877 F. Supp. 2d at 923 (citation omitted). The court cannot say that "it is clear that the matter to be stricken could

---

[50] Opposition – ECF No. 67 at 3.

ORDER – No. 17-cv-00898-LB              12

have no possible bearing on the subject matter of the litigation." *Walters*, 730 F. Supp. 2d at 1196 (citing *Lilley,* 936 F. Supp. at 713).

The court cannot discern any facts supporting a theory of an implied license, implied permission, or acquiescence.[51]

A non-exclusive license to use or distribute copyrighted work may be implied by conduct. *See Foad Consulting Grp. v. Azzalino*, 270 F.3d 821, 835 (9th Cir. 2001). The Ninth Circuit has recognized the existence of an implied license when a plaintiff created a copyrighted work at the request of a defendant, delivered it to the defendant, and intended that the defendant use or distribute the work. *Asset Mktg. Sys. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008).

The defendants allege only facts about theft of trade secrets and not facts about an implied license, permission, or acquiescence. The court strikes the third affirmative defense to the extent that it is grounded on this theory. The court strikes it with leave to amend but suggests that — given the court's relatively liberal date to amend the pleadings to allow parties to conform pleadings to the evidence — that the defendants defer any amendment.

The issue then is whether the defendants fairly raise the defenses in the form of counterclaims. The court holds that they do not. The court recognizes the tension in allowing the affirmative defense to stand and the claims to fall. But there is a reason that striking is a disfavored remedy: if the defense possibly bears on the case, *see Walters*, 730 F. Supp. 2d at 1196, then the court ought not to cabin the litigation to eliminate that possible defense. By contrast, consider again the allegations of unfair conduct: the plaintiffs concealed their role in the design and manufacturing process, their wrongful misappropriation and use of trade secrets in registering the claimed copyrights, and their conspiracy with Mr. Chudy and Golf Gifts & Gallery to steal trade secrets.[52] The conspiracy allegations are too conclusory to support stand-alone claims. The defendants' competing view of the copyright claims is more appropriately addressed through its unclean-hand defense to the plaintiffs' claims for copyright infringement. *Cf. Smith v. Metropolitan Prop. &*

---

[51] SAAC – ECF No. 52 at 12.

[52] *Id.* at 13.

*Liab. Ins. Co.*, 629 F.2d 757, 759 (2nd Cir. 1980); *Daum v. Planit Solutions, Inc.*, 619 F. Supp. 2d 652, 657 (D. Minn. 2009) (no need for declaratory relief when adjudicating the breach-of-contract claim for damages will resolve any issues regarding interpretation of the contract).

### 3. Affirmative Defense: "Patent Damages Barred"

The plaintiffs move to strike the defendants' second affirmative defense: "patent damages barred."[53] The defendants do not oppose the motion. The court strikes the defense.

## CONCLUSION

The court denies the motion to strike the third affirmative defense, except that it strikes the defense with leave to amend to the extent that it is based on a theory of implied license or implied permission. The court grants the motion to dismiss the CUTSA and copyright counterclaims.

The plaintiffs must file any amended complaint by November 17, 2017.

This disposes of ECF No. 60.

**IT IS SO ORDERED.**

Dated: November 3, 2017

LAUREL BEELER
United States Magistrate Judge

---

[53] *Id.* at 12.